UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KESTANY BEVERLY LYNDSY GUZZETTA,

|                                          |                                |
|------------------------------------------|--------------------------------|
| Plaintiff,                               | 25-CV-6105-FPG                 |
| v.                                       |                                |
|                                          | DECISION & ORDER               |
| STRONG MEMORIAL HOSPITAL, *et al.*,      |                                |
| Defendants.                              |                                |

## INTRODUCTION

*Pro se* Plaintiff Kestany Beverly Lyndsy Guzzetta brings this civil rights action against Defendants University of Rochester Strong Memorial Hospital, Andrea Rose Lynn, Michelle Siembor, and Victoria Dean. ECF No. 30. Defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] ECF No. 31. Plaintiff opposes the motion. ECF No. 34. For the reasons that follow, Defendants' motion to dismiss (ECF No. 31) is GRANTED.

## BACKGROUND

Plaintiff alleges that on September 11, 2024, she gave birth to a daughter at Strong Memorial Hospital in Rochester, New York. ECF No. 30 at 3. She claims that while she was in the middle of active labor, Defendant Andrea Rose Lynn, a registered nurse employed by the hospital, took urine out of Plaintiff's catheter bag to test it for drugs. ECF No. 30 at 2–3. Plaintiff maintains that the urine was taken without her consent or the consent of her medical proxy solely for the purpose of reporting the results to Monroe Country Child Protective Services ("CPS"). *Id.*

---

[1] In the alternative, Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 31. Because the Court concludes that the relevant claims are properly dismissed under Rule 12(b), it will not address Defendants' summary judgment motion.

at 3–4. Plaintiff further maintains that because she disclosed to hospital staff that she used cocaine in the weeks prior to the birth of her child and her treatment records reflected a positive drug test on September 6, 2024, no drug screening was needed and there was no medical reason to perform the test. *Id.* at 5.

After Plaintiff's urine was taken for testing, Plaintiff alleges that Michelle Siembor, a licensed social worker employed by Strong Hospital, submitted knowingly false information to CPS, claiming that Plaintiff and her daughter had tested positive for cocaine. *Id.* at 2, 5. Plaintiff alleges that Siembor was aware of the test and its purpose and created a fabricated report and basis for Plaintiff's child to be removed from her care. *Id.* at 5. She also maintains that Defendants Andrea Rose Lynn and Michelle Siembor acted in concert and conspiracy, with Lynn performing the illegal drug test and Siembor submitting false reports to achieve CPS involvement. *Id.*

Plaintiff alleges that based solely on these false reports, CPS initiated an investigation and removed Plaintiff's children from her care for more than thirty days. *Id.* Additionally, she alleges that Defendants, in consultation with CPS, kept her child hospitalized until discharge was approved by CPS and not for any legitimate medical reason. *Id.* Finally, Plaintiff alleges that Defendant Victoria Dean, a licensed social worker employed by Strong Hospital, disclosed Plaintiff's private prenatal records and treatment notes containing references to past cocaine and methadone maintenance to CPS. *Id.* at 2, 6.

On February 18, 2025, Plaintiff brought the present action in this Court. ECF No. 1. On October 15, 2025, this Court dismissed Plaintiff's First Amended Complaint, ECF No. 3, for failure to state a claim but granted Plaintiff leave to amend. ECF No. 29. On November 13, 2025, Plaintiff filed her Second Amended Complaint, ECF No. 30. In her Second Amended Complaint, Plaintiff brings four claims pursuant to 42 U.S.C. § 1983 for: (1) unlawful search in violation of

the Fourth Amendment; (2) deprivation of the fundamental right to family integrity in violation of the Fourteenth Amendment; (3) civil conspiracy; and (4) disclosure of private medical information in violation of the Fourteenth Amendment. *Id.* Additionally, Plaintiff brings numerous claims under state law. *Id.*

**LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination regarding "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Under this plausibility standard, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "[W]ell-pleaded factual allegations" permit a court to "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Although Plaintiff's factual allegations set forth in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* at 678. If a plaintiff "ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The Second Circuit has recognized that "this plausibility standard governs claims brought even by *pro se* litigants." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *5 (N.D.N.Y. Oct. 22, 2008) (citing, *e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. 2008), and *Boykin v. KeyCorp*, 521 F.3d 202, 215–16 (2d Cir. 2008)). However, the Court remains mindful that a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin*, 521 F.3d at 214. Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted)).

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The Court may also review any "documents that plaintiff[ ] either possessed or knew about and upon which [she] relied in bringing the [action]." *Id.*

## DISCUSSION

Defendants now move to dismiss Plaintiff's claims under federal law for failure to state a claim pursuant to Rule 12(b)(6) and argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. ECF No. 31. The Court discusses Defendants' motion as to each of Plaintiff's claims below.

### I.    Federal Claims

Defendants argue that Plaintiff has failed to state a claim as to her claims under 42 U.S.C. § 1983 because she has not plausibly alleged that Defendants were state actors. ECF No. 31-2 at

6. As the Court explained in its October 15, 2025 Decision and Order (ECF No. 29), to state a valid claim under 42 U.S.C. § 1983, "the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). As such, 42 U.S.C. § 1983 generally applies to public officers, not private citizens. *Kurtz v. Hansell*, No. 20 Civ. 3401, 2021 WL 1143619, at *9 (S.D.N.Y. Mar. 14, 2021). Nevertheless, "in certain circumstances, private actors can be considered to have acted 'under color of state law.'" *Id.* One such circumstance is when a traditionally private entity is acting as "reporting and enforcement machinery for [ ] a government agency charged with detection and prevention of child abuse and neglect." *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000), *cert. denied*, *Kia P. ex rel. Mora P. v. New York City*, 534 U.S. 820 (2001). The Court agrees with Defendants that Plaintiff has failed to plead state action as to each § 1983 claim for the reasons described below.

### A.  Fourth Amendment Search Claim

Plaintiff's first cause of action alleges that Defendant Andrea Rose Lynn violated Plaintiff's Fourth Amendment rights by "conducting a nonconsensual drug test while [Plaintiff] was in labor, without medical necessity and for the purpose of generating a CPS investigation." ECF No. 30 at 7. As the Court explained in its earlier decision, in this case, to satisfy the state action requirement, Plaintiff would need to allege facts that demonstrate that the drug test was done solely for the purpose of reporting the results to CPS and not for any medical reason. ECF No. 29 at 8 (citing *Kia P.*, 235 F.3d at 756–57). To the extent that Plaintiff simply alleges that the drug test was conducted "without medical necessity and for the purpose of generating a CPS investigation," such conclusory allegations are insufficient to allege state action. *See Alfaro*

*Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) (holding that allegations that amount to "nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983"). As for Plaintiff's other factual allegations related to this claim, Plaintiff alleges that Defendants "issued written threats and warnings that CPS involvement would occur if any positive toxicology screens were detected at birth," which Plaintiff claims demonstrates "premeditated targeting and intent to interfere with Plaintiff's parental rights." ECF No. 30 at 4. Additionally, Plaintiff states that the drug testing during labor was not required because she had already tested positive for drugs the week prior and she was being frequently monitored due to her high-risk pregnancy. *Id.* at 4–5.

These allegations are insufficient to allege state action. As the Court explained previously, a private hospital is not a state actor when it performs functions on behalf of a child welfare agency so long as there is a medical purpose for performing that function. *See Kia P.*, 235 F.3d at 756–57. Therefore, even accepting Plaintiff's allegations as true that Lynn conducted the drug test for the purpose of reporting the results to CPS, so long as there was also a medical reason for performing the test, Lynn is not a state actor. Here, the records attached to Plaintiff's Second Amended Complaint demonstrate that the drug test was also conducted for a medical purpose—that is, it was conducted to determine whether it would be medically advisable for Plaintiff to breastfeed her newborn. *See* ECF No. 30-1. Specifically, the records indicate that Plaintiff was advised that if she had a positive drug screen at delivery, CPS may become involved. *Id.* at 22. The records also demonstrate that Plaintiff was warned that "she may not be eligible to breastfeed with active substance use" and that a urine drug screen "likely will be indicated on admission if she endorses quitting and desires to breastfeed." *Id.* at 23. The records further state that Plaintiff "desires to breastfeed" "with history of opioid use disorder" and that a maternal urine drug screen done on

admission was positive for cocaine "with confirmation still pending." *Id.* at 27. Finally, the records state that "[g]iven the ongoing and recent cocaine use, [the treating nurse] would recommend against breastfeeding/provision of breastmilk at this time." *Id.* Therefore, based on these records, it is clear that the drug test was not done solely for the purpose of reporting Plaintiff to CPS, but was also conducted—at least in part—to evaluate whether it would be medically advisable for Plaintiff to breastfeed her child. As such, Plaintiff has failed to sufficiently plead state action as to her Fourth Amendment claim.

### B. Fourteenth Amendment Familial Integrity Claim

Plaintiff's second claim alleges that Defendants violated her Fourteenth Amendment right to familial integrity by retaining her newborn even after the newborn was medically cleared to be released. ECF No. 31. As the Court explained in its earlier decision, the Second Circuit has held that when a private hospital retains a baby and that baby has not been medically cleared to be released, the hospital is not a state actor. ECF No. 29 at 7 (citing *Kia P.*, 235 F.3d at 756–57). However, once the baby receives medical clearance to be released and is only being held by the hospital for child welfare purposes, the hospital is acting as both "reporting and enforcement machinery" for the child welfare agency and becomes a state actor subject to § 1983 liability. *Id.* (quoting *Kia P.*, 235 F.3d at 756–57).

In the Second Amended Complaint, Plaintiff alleges that Defendants "in consultation with [CPS] kept the infant hospitalized until Safe discharge approval by [CPS], not for any legitimate reason." ECF No. 30 at 5. Additionally, Plaintiff alleges that Defendants Siembor and Lynn acted in concert with CPS, "knowingly and intentionally" fabricating "false information in a CPS report that claimed both Plaintiff and her newborn had tested positive for cocaine, despite knowing that only Plaintiff's urine was tested and the baby was not." *Id.* at 8. In support of these allegations,

Plaintiff submitted as an attachment to her Second Amended Complaint a note from Defendant Dean, stating that Dean "requested baby not be discharged over the weekend to allow CPS some time to find a safe discharge resource – NP in agreement to not discharge baby without safe discharge plan." ECF No. 30-1 at 30.

The Court concludes that Plaintiff has failed to plead state action as to this claim because she has failed to plausibly allege that the baby was held after the baby was medically cleared to be released. To the extent that Plaintiff simply alleges that the hospital kept the infant hospitalized until a safe discharge plan was approved by CPS, and not for any legitimate reason, such conclusory statements are insufficient to state a claim. *See Alfaro Motors, Inc.*, 814 F.2d at 887. Further, the attachment Plaintiff cites as evidence that the hospital was holding the baby solely at the request of CPS does not in fact indicate that the hospital was holding the baby for CPS. Instead, it shows that Dean, a social worker for the private hospital, requested that the baby not be discharged over the weekend so that CPS could develop a safe discharge plan. ECF No. 30-1 at 30. Nothing in the note indicates that this was at the request of CPS or that the hospital was holding the baby solely for CPS. *See id.*

Indeed, in support of their motion, Defendants have submitted Plaintiff's newborn's medical records, which demonstrate that Plaintiff's newborn was not held solely at the request of CPS.[2] *See* Def. Exh. B. Instead, these records demonstrate that Plaintiff's newborn was held in the hospital until September 18, 2024, due to medical reasons. *Id.* First, these records indicate that Plaintiff's baby was suffering from neonatal jaundice, which was not resolved until September 17, 2024. *Id.* Second, these records indicate that Plaintiff's baby was set to be released on September

---

[2] The Court may properly consider these records as they are incorporated by reference in Plaintiff's complaint, *see* ECF No. 30 at 5 (stating that records from hospital staff stated that the baby was only irritable), and are records that Plaintiff knew about and relied on in bringing this action. *See Rothman*, 220 F.3d at 88.

17, 2024, but began experiencing worsening withdrawal symptoms that day. *Id.* Consequently, the guardians who assumed custody of Plaintiff's newborn were given the option of having the newborn stay another night to address these symptoms. *Id.* The guardians decided that the newborn should stay another night in the hospital, and the newborn was discharged the next day on September 18, 2024. *Id.* Therefore, at no time was the hospital holding the baby solely as a function of child welfare services; rather, the baby was released as soon as it was medically advisable to do so. *Id.* As such, Defendants were not acting as state actors, and Plaintiff has failed to state a claim as to her Fourteenth Amendment familial integrity claim.

### C. Fourteenth Amendment Privacy Claim

Plaintiff's third claim alleges that Defendant Dean violated Plaintiff's Fourteenth Amendment right to privacy by disclosing her private hospital medical records to CPS without consent. ECF No. 30 at 11. Again, as the Court explained in its previous decision and order, in order to plausibly plead state action, Plaintiff would need to allege facts that demonstrate that Dean disclosed Plaintiff's private information to CPS solely for the purpose of reporting Plaintiff to CPS and not for any medical purpose. ECF No. 29 at 8 (citing *Kia P.*, 235 F.3d at 756–57). Plaintiff's allegations as to this claim are that Dean, (1) "acting as a hospital social worker, further accessed and disclosed Plaintiff's private prenatal records and treatment notes containing references to past cocaine use and methadone maintenance to Monroe County CPS[;]" (2) "acting under color of state law and in the course of her employment with University of Rochester, unlawfully accessed and disclosed Plaintiff's confidential prenatal and hospital medical information to CPS without Plaintiff's consent or authorization[;]" and (3) "acting under color of state law, accessed and disclosed Plaintiff's private prenatal and hospital medical records without consent." ECF No. 30 at 6, 11. Plaintiff also alleges that "[t]hese actions were taken in collaboration with CPS for the

purpose of initiating a child protective investigation and detaining Plaintiff's newborn, not for any medical reason." *Id.* at 7.

As for her allegations that Dean was "acting under color of state law" and that Dean's actions were "taken in collaboration with CPS for the purpose of initiating a child protective investigation and detaining Plaintiff's newborn, not for any medical reason," such conclusory allegations are insufficient to plausibly allege state action. *See Alfaro Motors, Inc.*, 814 F.2d at 887. Otherwise, there are no allegations in the complaint that suggest that Dean was a state actor or that there was no medical purpose for disclosing Plaintiff's medical information to CPS. Indeed, the records submitted by Plaintiff indicate that Dean disclosed Plaintiff's medical information to CPS to ensure the health and safety of Plaintiff's baby through the implementation of a safe discharge plan. ECF No. 30-1 at 30. The records submitted by Defendants confirm this, as they document Defendants' concerns about Plaintiff's newborn's increasing withdrawal symptoms and the need for the newborn to be appropriately cared for after discharge. *See* Def. Exh. B. As such, there was a medical reason for the disclosure of the information to CPS, and Plaintiff has failed to plead state action as to this claim.

### D. Civil Conspiracy Claim

Plaintiff's fourth claim alleges a civil conspiracy. ECF No. 30 at 8. While Plaintiff does not cite a specific statute as the basis for this claim, the Court construes it as being brought pursuant to 42 U.S.C. § 1983 given that all the cases cited in support of her claim arise under that statute and her references to § 1983 elsewhere in the complaint. *See id.*

In her Second Amended Complaint, Plaintiff alleges that "Defendants acted in concert and conspiracy, with [Defendant Andrea Rose Lynn] performing an illegal drug test and [Defendant Michelle] Siembor submitting false reports to achieve CPS involvement." ECF No. 30 at 5. She

10

further alleges that "Defendants conspired to commit unlawful acts, including illegal drug testing and filing false CPS reports, to deprive Plaintiff of her constitutional rights." *Id.* at 8. Finally, she alleges that Defendants acted in concert with CPS and that "[t]hese actions were taken in collaboration with CPS for the purpose of initiating a child protective investigation and detaining Plaintiff's newborn, not for any medical reason." *Id.* at 7–8.

The Court again concludes that Plaintiff has failed to sufficiently plead state action as to this claim. A private actor may become a state actor where he or she acts in concert with a state actor to commit an unconstitutional act. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). To the extent that Plaintiff alleges that Defendants conspired together to deprive her of her constitutional rights, all of the Defendants are private actors. Therefore, allegations that they conspired together are insufficient to plead state action because such actions were not taken in concert with a state actor. *See id.*

To the extent that Plaintiff alleges that Defendants acted in concert with CPS and that actions "were taken in collaboration with CPS[,]" as the Court explained in its prior decision, a plaintiff cannot simply rely on allegations that are "nothing more than broad, simple, and conclusory statements" to state a claim. ECF No. 29 at 10 (quoting *Alfaro Motors, Inc.*, 814 F.2d at 887). Instead, a plaintiff must provide factual allegations that demonstrate that Defendants are liable for the misconduct alleged. *See id.* at 3 (citing *Ashcroft*, 556 U.S. at 678). Here, Plaintiff has simply made conclusory allegations that Defendants and CPS acted together to initiate an investigation and detain her baby. Such conclusory allegations are insufficient to allege a civil conspiracy that would render Defendants state actors subject to § 1983 liability. *See Ciambriello*, 292 F.3d at 324 (holding that a merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity); *Eckert v. City*

11

*of Buffalo*, No. 22-CV-540, 2025 WL 2836547, at \*13 (W.D.N.Y. Oct. 6, 2025) ("Although allegations of direct evidence of conspiracy are not necessary to state a viable conspiracy claim, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of . . . constitutional rights are properly dismissed." (internal quotation and brackets omitted)). Consequently, Plaintiff has failed to sufficiently plead state action as to her civil conspiracy claim.

### E.  Leave to Amend Denied

The Court declines to give Plaintiff another opportunity to amend her federal claims. A court need not give a *pro se* plaintiff "an opportunity to amend his or her pleading before dismissing that pleading for failure to state a claim[ ] . . . where, as here, the plaintiff has already been afforded the opportunity to amend his or her pleading." *Bratton v. Fitzpatrick*, No. 12-CV-204, 2012 WL 4754558, at \*2 (N.D.N.Y. Oct. 4, 2012). Indeed, because Plaintiff previously failed to take advantage of her opportunity to substantiate her legal claims with additional factual allegations, *see* ECF No. 3 at 3; ECF No. 30, the Court concludes that "any attempt to replead would be futile." *Doroz v. Delorio's Foods, Inc.*, 437 F. Supp. 3d 140, 159 (N.D.N.Y. 2020). As such, all of Plaintiff's claims arising under 42 U.S.C. § 1983 are dismissed with prejudice.

## II.    State Law Claims

Plaintiff has also brought numerous state law claims against Defendants. *See* ECF No. 30. Defendants argue that because Plaintiff has failed to sufficiently plead a federal cause of action, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. ECF No. 31-2 at 9–10. Specifically, they argue that the traditional values of judicial economy, convenience, fairness, and comity weigh in favor of the Court declining to exercise supplemental

jurisdiction. *Id.* at 10. In response, Plaintiff maintains that the Court should retain jurisdiction over the state law claims. ECF No. 34 at 13.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims where, as here, it has "dismissed all claims over which it has original jurisdiction." In evaluating whether to dismiss supplemental claims, a court balances the "traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks omitted). Generally, when federal law claims are "eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (internal ellipses omitted).

Because Plaintiff's federal claims are being dismissed, the lawsuit is in its early stages, and there are no other factors favoring the retention of jurisdiction over the state law claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See One Communications Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010). Accordingly, Plaintiff's state law claims will be dismissed without prejudice to refiling in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote and citation omitted).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 31) is GRANTED. Plaintiff's claims pursuant to 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE. Plaintiff's

state law claims are DISMISSED WITHOUT PREJUDICE to refiling in state court. Additionally, Plaintiff's motion for exemption from PACER fees (ECF No. 38) is DENIED AS MOOT. The Clerk of Court is directed to close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Plaintiff should direct requests to proceed on appeal as a poor person to the United States Court of Appeals for the Second Circuit on motion in accordance with Federal Rule of Appellate Procedure 24.

IT IS SO ORDERED.

Dated: April 30, 2026
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

14